**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

AUTOMATED CREEL SYSTEMS, INC.,
a Georgia Corporation,

Plaintiff,

v.

SHAW INDUSTRIES GROUP, INC.,
a Georgia Corporation,

Defendant.

_______________________________________/

## COMPLAINT FOR WILLFUL PATENT INFRINGEMENT

Plaintiff, AUTOMATED CREEL SYSTEMS, INC., a Georgia corporation, by and through the undersigned, hereby files this Complaint for Willful Patent Infringement against SHAW INDUSTRIES GROUP, INC., a Georgia Corporation, and, in so doing, states as follows:

## JURISDICTION, VENUE AND THE PARTIES

1. This is an action brought pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 271, *et. seq*.

2. This Court has original jurisdiction pursuant to Title 28, United States Code, Section 1331, as this case involves a federal question arising under the Constitution, laws or treaties of the United States.

3. At all times material hereto, AUTOMATED CREEL SYSTEMS, INC., a Georgia corporation (hereinafter "AUTOMATED CREEL"), had and has its principle address located in Fulton County, Georgia.

4. At all times material hereto, SHAW INDUSTRIES GROUP, INC., a Georgia Corporation (hereinafter "SHAW"), has and had its principal address located in Whitfield Country Georgia.

5. This action arises as a result of the infringing conduct of SHAW, which implicates interstate commerce.

6. Venue is proper in the Northern District of Georgia pursuant to Title 28, United States Code, Section 1391(b) and (c) as Defendant "resides" in this judicial district, as the term "reside" is interpreted under Chapter 87, United States Code, and because a substantial part of the events giving rise to the infringement claims at issue occurred within this judicial district. Venue is also appropriate pursuant to Title 28, United States Code, Section 1400(b), which provides, in part, that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides".

7. All conditions precedent have been met, waived, or satisfied to bring this lawsuit.

## GENERAL ALLEGATIONS

8. AUTOMATED CREEL, through its related entities, was founded in 1967 by F.R. Chadwick III as Southern Monorail Company and has at all times been engaged in the manufacture and service of overhead material handling equipment with its main customer base being textile manufacturers.

9. F.R. Chadwick III turned over AUTOMATED CREEL to his son, David Chadwick, in 2005, who is now the President of AUTOMATED CREEL.

10. Among the equipment manufactured by AUTOMATED CREEL are creels and their related parts.

11. Essentially, a creel is a frame which holds bobbins or threaded strands of material which are put into a machine that makes fabric, textiles, wire, tires, etc., and it is used in multiple different industries.

12. SHAW is a manufacturer of carpets and regularly uses creels in its manufacturing process.

13. In 2004, David Chadwick allowed SHAW to inspect a creel that AUTOMATED CREEL had developed and manufactured for another company.

14. After that inspection, SHAW entered into its first contract with AUTOMATED CREEL, purchasing three creels which were delivered in 2005 for an approximate total of $1,700,000.

15. As of 2005, the creeling operation in carpet had remained largely unchanged since the early 1970's, and the industry was plagued by worker injuries. As such, Mr. Chadwick recognized there was an opportunity to make the process safer and increase production.

16. One product line that AUTOMATED CREEL developed to make the creeling process safer and to increase production was its big tufting machine creel which moves yarn to allow for mechanical loading rather than having laborers move the yarn to the creel for manual loading as had been the industry norm.

17. Thereafter, AUTOMATED CREEL developed a patented product it called its "rotator" which completely eliminated the need for laborers to pull a pin which had previously been required in creeling operations and which laborers had been repetitively pulling up to 2,400 times a day.

18. Since AUTOMATED CREEL'S first contract with SHAW, and during the development of Plaintiffs new products, AUTOMATED CREEL continuously and aggressively marketed their products and services to SHAW.

19. Specifically, David Chadwick, invented and developed a revolutionary supply system and method which would allow creels to run continuously without needing to be stopped each time new reels of material were feed into the creel.

20. Mr. Chadwick's revolutionary new system, for the first time ever, made it possible to automatically receive material from an adjacent full cart once the active feeding cart becomes depleted, which advantageously allows for the continuous operation of creels without stopping the creels each time a new reel of material is added to it.

21. Mr. Chadwick met with SHAW on September 14, 2007 and presented them with his new designs.

22. At that September 14, 2007 meeting, SHAW did request to keep a copy of Mr. Chadwick's drawings, but Mr. Chadwick declined the request.

23. By early December 2007, AUTOMATED CREEL had a functional prototype of the cart-to-cart transfer system.

24. SHAW visited AUTOMATED CREEL'S facilities on December 13, 2007 to inspect the prototype.

25. At that meeting, Brent Boatwright of SHAW began taking pictures on his mobile phone of the cart-to-cart transfer system.

26. Thereafter, on January 17, 2008, AUTOMATED CREEL sent an e-mail to SHAW referencing the pictures taken by Mr. Boatwright and expressly notifying SHAW that the system was a proprietary product and that a patent application had been filed for the system. A copy of said e-mail is attached hereto

as **Exhibit "A"**.

27. AUTOMATED CREEL continued to work on the prototype over the next several months.

28. AUTOMATED CREEL again met with SHAW at AUTOMATED CREEL'S facilities on April 17, 2008.

29. At the April 17, 2008 meeting, AUTOMATED CREEL agreed to allow SHAW to test the prototype for 30 days.

30. Mr. Chadwick took three carts and two transfer tables to SHAW'S Plant 6 on May 5, 2008.

31. On May 6, 2008, SHAW sent AUTOMATED CREEL an e-mail advising that, "The creels are still looking good." and requesting pricing information. A copy of said e-mail is attached hereto as **Exhibit "B"**.

32. After receiving the pricing information, SHAW again sent an e-mail on May 19, 2008 continuing to advise that the creel was working successfully. A copy of said e-mail is attached hereto as **Exhibit "C"**.

33. Through May 2008, SHAW and AUTOMATED CREEL continued to communicate regarding the size of the equipment.

34. Mr. Chadwick last met with SHAW on May 21, 2008 regarding the equipment.

35. At that May 21, 2008 meeting, SHAW demanded that AUTOMATED CREEL execute a Mutual Confidentiality Agreement before discussing the patented system any further.

36. On June 10, 2008, AUTOMATED CREEL advised SHAW that it would not execute the Mutual Confidentiality Agreement proposed by SHAW.

37. AUTOMATED CREEL thereafter removed its prototype from SHAW'S facilities.

38. On October 5, 2010, the United States of America issued the patent over Mr. Chadwick's invention under United States Patent No. 7,806, 360 ("the '360 Patent"). A copy of the '360 Patent is attached hereto as **Exhibit "D"**.

39. Since removing the prototype from SHAW'S facilities, AUTOMATED CREEL has developed a firm belief that SHAW has built the system described by the '360 Patent and that SHAW regularly uses the patented technology to manufacture the carpet it sells throughout the United States and world wide.

40. AUTOMATED CREEL has sent a cease and desist letter to SHAW, inspected their manufacturing facilities and confirmed that SHAW does in fact infringe on Plaintiff's patent. A copy of said cease and desist letter (without attachments is attached hereto as **Exhibit "E"**.

41. Despite the above, AUTOMATED CREEL has been unable to convince SHAW to cease its infringing conduct.

42. As such, AUTOMATED CREEL has been required to retain the undersigned counsel to pursue its interests in this matter, and is obligated to pay the undersigned a reasonable attorneys' fee for their services, and to reimburse the undersigned for any costs incurred in connection with said representation.

## COUNT I:
## TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

43. Plaintiff re-alleges and re-avers paragraphs one (1) through forty-two (42) as if fully set forth herein.

44. This is an action for temporary and permanent injunctive relief pursuant to Title 35, United States Code, Section 283, of the United States Patent Act.

45. Said section provides that this Court may "grant injunctions in accordance with the principles of equity to prevent the violations of any right secured by patent, on such terms as the court deems reasonable."

46. As alluded to in more detail above, SHAW has infringed, and continues to infringe, on the '360 Patent.

47. Despite repeated demands, SHAW continues to infringe the claims of

the '360 Patent.

48. Such refusal to honor Plaintiff's exclusive patent rights has caused, and will continue to cause, irreparable harm. Each day that Plaintiff is deprived of its earned intellectual property rights causes irreparable injury.

49. Plaintiff has no adequate remedy at law, especially because the property at issue is intellectual property and patented work that is being deprived.

50. There is no remedy at law that can fully compensate Plaintiff for the deprivation of said patent rights, and, in light of the facts of this case, there is a substantial likelihood that Plaintiff will succeed on the merits of the instant case.

WHEREFORE, Plaintiff AUTOMATED CREEL SYSTEMS OF AMERICA, INC., a Georgia corporation, by and through the undersigned, hereby respectfully requests that the Court enter a temporary and permanent injunction enjoining Defendant SHAW INDUSTRIES GROUP, INC., a Georgia Corporation, and all those in active concert and participation with SHAW INDUSTRIES GROUP, INC., from using, making, selling, marketing, distributing, transferring, or otherwise infringing on the claims of the '360 Patent as more fully set forth above, together with costs, attorneys' fees, and such other and further relief as this Court deems just and proper.

**COUNT II:**
**WILLFUL PATENT INFRINGEMENT**

51. Plaintiff re-alleges and re-avers paragraphs one (1) through forty-two (42) as if fully set forth herein.

52. This is an action for patent infringement pursuant to Title 35, United States Code, Section 271, of the United States Patent Act.

53. As more fully set forth above, SHAW has infringed, and continues to infringe, the claims of the '360 Patent by, *at least*, making and using infringing technology.

54. All such infringing conduct of SHAW has occurred and was committed by SHAW in a willful manner, irrespective of and despite repeated demands that SHAW immediately cease its infringing conduct and recognize the rights under the '360 Patent.

55. SHAW'S actions have been committed and performed in a willful, knowing and bad faith manner.

56. SHAW'S actions have caused, and continue to cause, irreparable harm to Plaintiff to which there is no adequate remedy at law.

WHEREFORE, Plaintiff AUTOMATED CREEL SYSTEMS OF AMERICA, INC., a Georgia corporation, by and through the undersigned, hereby respectfully demands judgment against Defendant SHAW INDUSTRIES GROUP,

INC., a Georgia Corporation, for the full amount of damages sustained, including, but not limited to, any and all remedies available pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 271, *et. seq.*, which included, but are not limited to, a reasonable royalty award, disgorgement of the profits received by Defendants, treble damages, costs, pre and post judgment interest at the maximum allowable rate, attorneys' fees, and such other and further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff AUTOMATED CREEL SYSTEMS OF AMERICA, INC., a Georgia corporation, hereby demands trial by jury of all issues so triable as a matter of law.

**Dated this 8th day of February, 2012.**

Respectfully Submitted,

/s/ Alexander D. Brown
ALEXANDER D. BROWN, ESQ.
GA. BAR NO. 902761
adb@trippscott.com
PETER G. HERMAN, ESQ.
FLA. BAR. NO. 353991
*Pro hac vice to be filed*
pgh@trippscott.com
TRIPP SCOTT, P.A.
110 SE Sixth Street, 15th Floor
Ft. Lauderdale, Florida 33301
Tel: 954.525.7500; Fax: 954.761.8475
*Counsel for AUTOMATED CREEL*